```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              :    **Sentencing Memorandum**

        -v.-                          :    08 Cr. 151 (DLC)

LEONARDO CRUZ-MARCELINO,              :
    a/k/a "Leonel Cruz,"
    a/k/a "Maximo Abreu,"             :

            Defendant.                :
- - - - - - - - - - - - - - - - - x
```



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 1, 2008

**BY HAND DELIVERY**

The Honorable Denise L. Cote
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

>     Re:  United States v. Leonardo Cruz-Marcelino,
>          08 Cr. 151 (DLC)

Dear Judge Cote:

The defendant is scheduled to be sentenced in the above-referenced case on July 11, 2008, at 11:00 a.m. The Government respectfully submits this letter in response to defense counsel's letter dated June 24, 2008 ("Def. Ltr."). The defendant argues that a sentence below the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range set forth in the United States Probation Department's Presentence Investigation Report ("PSR"), to run concurrently with a previously imposed state term of imprisonment, is warranted as a result of: (1) the allegedly unwarranted disparity between sentences imposed for illegal reentry cases in this District as compared to districts with "fast-track" programs; (2) the increase in the defendant's Guidelines level as a result of his prior criminal history; and (3) the defendant's personal characteristics. None of these arguments supports a non-Guidelines sentence in this case. Accordingly, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 46 to 57 months' imprisonment as set forth in the PSR, which is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Honorable Denise L. Cote
July 1, 2008
Page 2 of 10

## Background

**A.   The Indictment**

    On April 10, 2008, the defendant appeared before Your Honor and pleaded guilty to a one count indictment, 08 Cr. 151 (DLC) (the "Indictment"). (PSR ¶ 2). The Indictment charged that on or about October 20, 2006, in the Southern District of New York and elsewhere, the defendant was found in the United States after having been removed from the United States subsequent to a conviction for an aggravated felony. (PSR ¶ 1).

**B.   The Offense**

    Cruz-Marcelino is and was, at all relevant times, a citizen and national of the Dominican Republic, and has never been a citizen of the United States. (PSR ¶ 7). At age 25, the defendant reportedly entered the United States legally, through Miami. (PSR ¶ 36). The defendant later relocated to Manhattan, New York. (Id.) On February 18, 1998, the defendant was sentenced to three years' imprisonment for Possession with the Intent to Distribute Cocaine, in Circuit Court for Baltimore County, Maryland. (PSR ¶ 7).

    On September 21, 1999, the defendant was deported from the United States to the Dominican Republic. (PSR ¶ 27). Sometime before October 20, 2006, however, the defendant re-entered the United States. On October 20, 2006, the defendant was found again in the United States upon being arrested by officers with the New York City Police Department on charges of Criminal Possession of a Controlled Substance. (PSR ¶ 29). Immigration and Customs Enforcement records reveal that, although Cruz-Marcelino returned to the United States after his deportation, Cruz-Marcelino had never applied for permission to re-enter the United States from the Attorney General, or his successor, the secretary for the Department of Homeland Security. (PSR ¶ 8).

    The defendant pleaded guilty to Criminal Possession of a Controlled Substance in the Third Degree in connection with his October 20, 2006 arrest, and he was ultimately sentenced to serve 5 years in state prison. (PSR ¶ 8). He was writted into the custody of the United States Marshals on March 13, 2008, and was first produced in the Southern District of New York on the instant charges on March 14, 2008. (PSR ¶ 9).

Honorable Denise L. Cote
July 1, 2008
Page 3 of 10

### C. The Presentence Investigation Report and Guidelines Calculation

Pursuant to Title 8, United States Code, Sections 1326(a) and (b)(2), the maximum prison sentence for the instant offense is 20 years' imprisonment. (PSR ¶ 50). Under the Guidelines, this charge has a base offense level of 8, which is increased by 16 levels to 24 because the defendant was previously deported after being convicted of a drug trafficking offense. (PSR ¶¶ 13, 14). Given the defendant's timely allocution and assuming continued acceptance of responsibility, a three-level reduction is warranted, resulting in a total offense level of 21. (PSR ¶¶ 19, 22). Based on a total offense level of 21 and a Criminal History Category of III, the Guidelines range is 46 to 57 months' imprisonment. (PSR ¶ 51).

## Discussion

### A. The Applicable Law and the Appropriate Sentence

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See *Gall* v. *United States*, 128 S. Ct. at 596 & n.6.

Honorable Denise L. Cote
July 1, 2008
Page 4 of 10

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 596 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; see also *Rita v. United States*, 127 S. Ct. at 2464; *United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006)(the Guidelines "'cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges.'")(quoting *United States v. Jiminez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006)(en banc)). To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597.

In the present case, a sentence within the advisory Guidelines range of 46 to 57 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing. From a categorical perspective, the Guidelines range that applies in this case reflects the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a). *Rita*, 127 S. Ct. at 2464. The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.*

From an individual perspective, the nature and circumstances of the offense, as well as the history and characteristics of the defendant, do not, as the defendant asserts, provide sound reason to deviate from the Guidelines range. The defendant suggests that his medical condition – diabetes and its attendant complications – favors the imposition of a non-Guidelines sentence. *See* Def. Ltr. at 2, 10. This, along with all of Cruz-Marcelino's other personal characteristics as set forth in the PSR, is a valid consideration for Your Honor at sentencing. However, it is not a sufficient basis to warrant a non-Guidelines sentence. The defendant's argument regarding his deteriorating health sounds more in a plea for better care while in prison, not as grounds for imposing a non-Guidelines sentence. Further, the records of the defendant's medical care while in federal custody (which are included with his sentencing submission) hardly indicate a lack of attention to his condition, but rather bespeak a recognition by the Bureau of Prisons of the seriousness of his illness and the requisite need for care.

In light of the defendant's criminal history, which demonstrates a recurring involvement with illegal narcotics, a sentence within the Guidelines range is sufficient, but not greater than necessary, to comply with the legitimate purposes of sentencing. In particular, one of the purposes of sentencing identified at 18 U.S.C. § 3553(a)(2) is "to afford adequate deterrence," and a sentencing factor to consider under § 3553(a) is "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). The nature of the defendant's prior criminal conduct and the need for adequate deterrence supports a Guidelines sentence in this case.

Honorable Denise L. Cote
July 1, 2008
Page 6 of 10

### B.   The Defendant's Fast-Track Argument Should Be Rejected

The defendant also argues that the Court should exercise its discretion to impose a below-Guidelines sentence that would address allegedly unwarranted disparities between the Guidelines range applicable to him and the lower Guidelines range applicable to defendants who plead guilty pursuant to "fast-track" programs in other federal judicial districts. Def. Ltr. at 7-8. Fast-track programs are intended to conserve scarce prosecutorial and judicial resources. *See United States v. Mejia*, 461 F.3d 158, 160-61 (2d Cir. 2006) (describing fast-track programs). Accordingly, districts with fast-track programs require, *inter alia*, that defendants agree to "expedited disposition, waiver of pre-trial motions by the defendant, waiver of appeal, and waiver of the right to habeas corpus," *id.* at 161, in order to benefit from the lower Guidelines range available to participants in the program.

In *Mejia*, the Second Circuit observed that because Congress approved of, but did not mandate, fast-track programs, it "necessarily decided that they do not create the unwarranted sentencing disparities that it prohibited in Section 3553(a)(6)." *Id.* at 163 (citations omitted). The *Mejia* court further observed that the Sentencing Commission had itself "rejected compensatory downward departure[s]" as a remedy for any disparity in sentences between fast-track and non-fast-track districts. *Id.* at 164. The court therefore concluded, joining all of the other Courts of Appeals that had considered the issue, that "a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable." *Id.* (citations omitted). Indeed, the court indicated that it was aware of "no sentencing principle [that] requires the sentencing court to mimic" fast-track benefits in non-fast-track jurisdictions. *Id.* at 163. Just recently, in *United States v. Hendry*, 522 F.3d 239 (2d Cir. 2008), the Second Circuit reaffirmed sentencing courts' "discretion not to depart on the grounds of a disparity created by the absence of a fast-track program." 522 F.3d at 241-42.

Neither *Mejia* or *Hendry* concludes that it is necessarily unreasonable for a district judge to take into account the existence of fast-track programs elsewhere when imposing sentence. Indeed, in light of the Supreme Court's recent decisions regarding sentencing, *see Gall* v. *United States*, 128 S. Ct. at 596, *Kimbrough* v. *United States*, 128 S.Ct. 558 (2007), the Government concedes that Your Honor *may* take such programs into account in imposing sentence. Nevertheless, the

decision in *Mejia* supports a conclusion that the disparities between fast-track and non-fast-track jurisdictions, which were authorized by Congress and the Sentencing Commission, were warranted and should not be undermined by imposition of fast-track-equivalent sentences on all illegal re-entrants, regardless of whether they qualify for, or choose to participate in, a fast-track program. After all, defendants who participate in fast-track dispositions waive various rights that Cruz-Marcelino did not. *Mejia*, 461 F.3d at 161; *Hendry*, 522 F.3d at 242. Accordingly, Cruz-Marcelino does not merit the sentencing benefit made available to fast-track defendants, and the absence of a fast-track program in this District does not support imposition of a below-Guidelines sentence in this case.

C.  **It Is Not "Inappropriate" For The Guidelines To Factor The Defendant's Prior Conviction For Possession with the Intent to Distribute Cocaine Into Both His Criminal History And Offense Level**

The defendant characterizes the use of his prior conviction to increase his offense level and his criminal history category as an "inordinate consideration." Def. Ltr. at 8. The defendant concedes that "the Guidelines contemplate double counting," but argues that the result is "unduly severe" and without justification by the Sentencing Commission. *Id.* at 8-9. The defendant notes that the increase in the defendant's offense level because of the nature of his prior conviction is akin only to the offense level increase for firearms possession crimes. *Id.* This argument does not, however, provide a basis for departure or a non-Guidelines sentence in this case. Before *Booker*, the Second Circuit addressed and rejected this "double counting" claim as a basis to downwardly depart from the applicable Guidelines range. *See United States v. Carrasco*, 313 F.3d 750, 756-758 (2d Cir. 2002) (citing cases); *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir. 1992) (defendant's criminal background is "relevant to determining both the defendant's criminal history category and the offense level for the charged conduct" for the offense of illegal re-entry). As the Second Circuit explained, while this feature of the Guidelines "may be double counting in a literal sense, double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis." *Campbell*, 967 F.2d at 25. An alien's prior felony conviction is relevant not only to determining his Criminal History Category, but also to the Offense Level calculation because it "reflect[s] the greater culpability of an alien who illegally reenters after committing an aggravated felony." *Carrasco*, 313 F.3d at 756-57.

Honorable Denise L. Cote
July 1, 2008
Page 8 of 10

      In this respect, the Guidelines do no more than "[p]arallel" the enhanced maximum provision of the statute, *id.*, which reflects *Congress*'s determination that an alien who was deported subsequent to the commission of an aggravated felony and who then unlawfully reenters the United States commits a much more serious offense than an alien without any criminal history who reenters unlawfully. *Compare* 18 U.S.C. § 1326(a) (providing a maximum term of imprisonment of two years for an alien convicted of illegal reentry), *with* 18 U.S.C. § 1326(b)(2) (providing a maximum term of imprisonment of twenty years for an illegal reentrant previously deported "subsequent to the conviction for commission of an aggravated felony"). In other words, the Sentencing Commission's creation of graduated offense levels for illegal re-entrants based on their prior criminal record is directly and firmly rooted in the illegal re-entry statute enacted by Congress.

      Nor have illegal re-entry offenses been singled out and treated differently from other offenses in the Sentencing Guidelines. Other Guidelines provisions also look to the defendant's prior criminal history in order to determine the applicable offense level. *See, e.g.*, U.S.S.G. § 2K1.3 (trafficking in and possession of explosive materials); U.S.S.G. § 2K2.1 (firearms possession and trafficking); U.S.S.G. § 2L1.1 (alien smuggling); U.S.S.G. § 2L2.1 (immigration and naturalization fraud to assist others); U.S.S.G. § 2L2.2 (immigration and naturalization fraud to assist self); U.S.S.G. § 4B1.1 (career offender); U.S.S.G. § 4B1.4 (armed career criminal). So, too, do other statutory provisions. *See, e.g.*, Title 18, United States Code, Section 924(e)(1) (providing a fifteen-year mandatory minimum for persons who violate Title 18, United States Code, Section 922(g) and have three previous convictions of certain types of offenses); Title 21, United States Code, Section 841(b)(1) (providing for various enhanced mandatory minimums and maximum sentences, depending on prior drug convictions).

D.   **Prison Custody Considerations**

      The defendant argues that the Court should impose a sentence that runs concurrently to his state court sentence. Def. Ltr. at 1, 10. U.S.S.G. §5G1.3 requires concurrent sentences only if the other offense is relevant conduct to the instant offense and was the basis for an increase in the offense level in the instant offense. U.S.S.G. §1B1.3 defines "relevant conduct" as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by

Honorable Denise L. Cote
July 1, 2008
Page 9 of 10

the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

Here, the defendant's prior criminal conduct – drug possession – is wholly separate from the instant illegal re-entry offense, and is therefore not relevant conduct. Further, the 2007 drug possession conviction had no impact on the defendant's offense level. Accordingly, under U.S.S.G. §5G1.3(c), this Court has discretion to impose the sentence to run concurrently, partially concurrently, or consecutively to the defendant's sentence imposed by the State. Application Note 3 states that a sentencing court should consider the following: the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)); the type and length of the prior undischarged sentence; the time served on the undischarged sentence and the time likely to be served before release; the fact that the prior undischarged sentence may have been imposed in state court, or at a different time before the same or different federal court; and any other circumstance relevant to the determination of an appropriate sentence.

Although the Court has the authority to order the defendant's sentence to run concurrently to his state sentence, as the defendant requests, that would yield a result whereby the defendant would effectively receive a "free ride" for the instant offense. The Government asserts that the more appropriate result would be a partially concurrent or consecutive sentence that adequately accounts for both of the defendant's criminal convictions. This result is seemingly supported by the Guidelines, for example, in the grouping rules for cases involving multiple crimes, whereby there is some additional punishment for a secondary crime (unless it is "fairly trivial in proportion to the more significant crime") in order to "accomplish the goals of retribution and deterrence." *Martinez-Salazar*, 318 F. Supp. 2d at 134. A fully concurrent sentence here would fail to "reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

Honorable Denise L. Cote
July 1, 2008
Page 10 of 10

## Conclusion

    For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the applicable Guidelines range that is not fully concurrent to the defendant's State sentence, as such a sentencing would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
GLEN A. KOPP
Assistant United States Attorney
(212) 637-2210


cc: Sabrina Shroff, Esq.